**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JERREECE NOEL | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CASE NO. |
| VS. | ) |
| | ) |
| CHALLENGE MANUFACTURING | ) HON. |
| COMPANY, | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |
| | ) |

*Plaintiff asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

## COMPLAINT

PLAINTIFF JERREECE NOEL, by and through her attorneys, CARLA D. AIKENS, P.L.C., submit the following Complaint CHALLENGE MANUFACTURING COMPANY.

## JURY DEMAND

COMES NOW PLAINTIFF JERREECE NOEL and hereby makes her demand for trial by jury.

## PARTIES AND JURISDICTION

1.     At all times relevant to this complaint, Plaintiff Phillip Curtis ("Plaintiff") was a resident of Oakland County in the State of Michigan.

2.     Defendant, Challenge Manufacturing Company ("Defendant"), has an operational address at 2501 Centerpoint Pkwy, Pontiac, MI 48341 in Oakland County in the State of Michigan.

3.     Venue is proper in this Court, because the violations of Title VII of the Civil Rights Act

1

of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

5.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

6.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## STATEMENT OF FACTS

7.      Plaintiff is an African American woman.

8.      On or around February 14, 2022, Defendant hired Plaintiff to work for it in the capacity of a Talent Acquisition Specialist.

9.      At the time of hire, Plaintiff's pay rate was approximately $55,000 a year.

10.     On or around October 23, 2022, Plaintiff was promoted to a Human Resources Generalist.

11.     After her promotion, Plaintiff's pay rate was approximately $70,000 a year

12.     In approximately June of 2022, Plaintiff noticed disparate treatment from her manager, Cheryl Brainard.

13.     Plaintiff was also aware of other minorities who were experiencing discrimination on the basis of their race, including the systematic and undeserved removal of African American workers for minor or made up issues.

14.     In contrast, Caucasian employees would make mistakes and would not be chastised.

15.     Further, Brainard specifically instructed employees that she did not want to hire people from certain areas, which had high concentrations of Black people.

16.     On or around June 22, 2022, Plaintiff was working a recruiting event where she was abruptly instructed to leave at 2 p.m.

17.     Plaintiff was the only employee instructed to leave at that time.

18.     At the time Plaintiff was instructed to leave the recruiting event, Defendant brought in a photographer to take photos of the event.

19.     The only individuals who were photographed were white.

20.     On or around July 1, 2022, Plaintiff was called into Brainard's office to discuss shift schedules.

21.     Once Plaintiff arrived to Brainard's office, she noticed her coworker, Iris Kote, was in the office, as well.

22.     Cheryl began to yell at Plaintiff, shouting and pointing at the door "If you're not happy, you can leave if you want to!"

23.     At that time, still in the presence of Kote, Brainard informed Plaintiff that she was being placed on a performance improvement plan.

24.     Plaintiff had never been disciplined nor written up at work.

25.     On the same day Plaintiff was placed on a performance improvement plan, Brainard came out of her office harassing Plaintiff shouting "How's it going down there Jerreece?!" and "You've been pretty quiet."

26.     Plaintiff wrote a letter to the Vice President of Human Resources, Kenneth Savage, to shed light on Brainard's behavior.

27.     On or around July 26, 2022, Plaintiff was called into Brainard's office with Kote. Plaintiff was asked if she would like to have a drink after the job fair scheduled for July 28, 2022.

28. After informing Brainard that she did not drink, Brainard inquired into Plaintiff's personal life. Brainard asked Plaintiff for the age of her children and whether Plaintiff was married.

29. On or around July 29, 2022, Plaintiff witnessed several of her coworkers drinking alcohol on company time. These coworkers included Brainard, Kote, Jackson Mahle, and Kyle Tarkington.

30. Plaintiff reported the incident to Savage, the VP of HR.

31. On or around November 3, 2022, Ted Lovell, a supervisor of Plaintiff, called Plaintiff in a loud voice, which upon information and believe was attempting to impersonate a slave master.

32. This incident occurred in front of everyone in the office and those who witnessed it all laughed.

33. Plaintiff did not find the stunt funny, and she asked Lovell what was going on.

34. Plaintiff's co-worker intervened and asked why he was speaking to her in that manner.

35. On or around November 4, 2022, Brainard began yelling at Plaintiff in her office with the door open where everyone could hear, where she repeatedly yelled "Do you want to be a recruiter."

36. When Plaintiff told Brainard she did not want to be a recruiter, Brainard told her she was silly and sent Plaintiff home to think about whether she wanted to be a recruiter.

37. Plaintiff filed a charge with the Michigan Department of Civil Rights ("MDCR") and EEOC on or about November 4, 2022, due to the discriminatory treatment she was experiencing.

38. On or around March 13, 2023, Plaintiff was presented with a performance improvement and plan, along with her employee performance review.

39.     Plaintiff disputed the performance improvement plan and performance review, and, upon information and belief, the review was a direct result of her engaging in protected activity.

40.     After receipt of the performance improvement plan, Plaintiff contacted her MDCR representative, Charles Hively, to inform him of what happened.

41.     After learning what happened, Mr. Hively initiated a retaliation claim against the Defendant in addition to the discrimination case.

42.     Due to Plaintiff's treatment, she began seeking medical treatment to help deal with the stress.

43.     As a result, Plaintiff was diagnosed with various medical conditions for which she was prescribed medication.

44.     Plaintiff has been ostracized in the office and forced to do an increased workload.

45.     Considering the increased workload, Plaintiff attempted to take the work home, like her other coworker, Jackson Mahle, was allowed to do, but she was ultimately not permitted to do so.

46.     After several months of her coworkers continuously mocking her, making jokes, and talking down on her, with no relief from Defendant, Plaintiff felt there was no other choice but to quit for her own well-being.

47.     On or around August 1, 2023, Plaintiff was forced to resign.

48.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I
**HARRASMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")**

49.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

50. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

51. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race.

52. Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct those Plaintiffs' daily work activities, as alleged in the statement of facts.

53. Plaintiff is an African-American woman, and, as a result, is a member of a protected class pursuant to Title VII.

54. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, as set forth in the facts section above, including but not limited to treating her differently and holding her to a different standard than those who were not African-American, culminating in her constructive termination.

55. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

56. Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication, including but not limited to subjecting her to worse treatment than her colleagues, on the basis of her race.

57. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

58.     As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

<b>COUNT II</b><br/>
<b>DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")</b>

59.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

60.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

61.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color.

62.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

63.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

64.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

65.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

66.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

67.     Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT III**</u>
**HOSTILE WORKPLACE EVIRONMENT IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

68.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

69.    At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

70.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiffs daily work activity, as alleged in the statement of facts.

71.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

72.    Plaintiffs suffered a hostile and intimidating workplace the entirety of her time working under Defendant.

73.    Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of underperforming, made the situation untenable.

74.    The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

75.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

76.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

77.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### RETALIATION IN VIOLATION OF 42 USC § 1981

78.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

79.     42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

80.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded to her by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

81.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

82.     Plaintiff engaged in activity protected by 42 USC § 1981 when she complained of and opposed unlawful racial discrimination.

83.     The retaliation by Defendant that Plaintiff experienced included her low scorimg performance review and her termination.

84.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

85.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

9

86. But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein including her termination.

87. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT V

### RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

88. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

89. 42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

90. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded to her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

91. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

92. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included offensive communication, mocking her, and making jokes about her.

93.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

94.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

95.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT VI

### RETALIATION IN VIOLATION OF TITLE VII

96.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

97.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

98.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

99.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

100.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported the issues to HR and the MDCR.

11

101. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to agents of Defendant and the MDCR.

102. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the of facts, up to and including termination. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

103. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

104. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

105. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

106. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII

### RETALIATION IN VIOLATION OF THE ELCRA

107. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

108. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

109. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

110. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

111. Plaintiff engaged in protected activity, as more fully laid out in the of facts, including, when Plaintiff protested and reported the issues to HR and the MDCR.

112. Defendant, through its agents, had knowledge that Plaintiff engaged in behavior because she reported the issue directly to agents of Defendant and the MDCR.

113. After Plaintiff engaged in protected activity, Defendant's agents took adverse employment actions against Plaintiff, as alleged in the statement of facts, up to and including termination.

114. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

115. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

116. As a proximate cause of Defendant's discriminatory actions, Plaintiff has suffered damaged including losses in compensation, mental anguish, emotional distress, humiliation, loss of earning capacity, other damages to be determined by way of discovery and at trial.

117. Plaintiff requests relief as described in the Prayer of Relief below.

## COUNT VIII

### DISCRIMINATION BASED ON SEX & GENDER
### IN THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT MCL 37.2101 et seq. ("ELCRA")

118. Plaintiff incorporates by reference all allegations in the preceding paragraphs as if they were alleged herein.

119. At all times relevant, Plaintiff was employed by Defendant.

120. Defendant was a covered "employer" within the meaning of the Elliot Larsen Civil Rights Act of 1976, MCL 37.2101 et seq. ("ELCRA").

121. Plaintiff is a woman and identifies as such. Defendant was aware of the same. As such, Plaintiff is a member of a protected class.

122. Plaintiff was subjected to offensive communication or conduct on the basis of her membership in this protected class.

123. A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity as alleged throughout this complaint.

124. Defendant's conduct, leading up to and including her termination, as alleged throughout this complaint, constitutes discrimination based upon Plaintiff's gender in violation of ELCRA.

125. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiffs rights.

126. As a proximate cause of Defendant's discriminatory actions, Plaintiff has suffered damaged including losses in compensation, mental anguish, emotional distress, humiliation, loss of earning capacity, other damages to be determined by way of discovery and at trial.

127. Plaintiff requests relief as described in the Prayer of Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, JERREECE NOEL, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3.      An award of lost wages and the value of fringe benefits, past and future;

4.      An award of interest, costs, and reasonable attorney fees; and

5.      An order awarding whatever other equitable relief appears appropriate at the time of final judgment.


Dated:  November 22, 2023


                                        Respectfully Submitted,

                                        /s/ *Carla D. Aikens*
                                        Carla D. Aikens (P69530)
                                        CARLA D. AIKENS, P.L.C.
                                        *Attorneys for Plaintiff*
                                        615 Griswold Ste. 709
                                        Detroit, MI 48226
                                        carla@aikenslawfirm.com


15